# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40557**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Wesley J. TITUS**
Specialist 4 (E-4), U.S. Space Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary
Decided 7 April 2025

————————————

*Military Judge*: Bradley J. Palmer.

*Sentence*: Sentence adjudged 14 February 2023 by GCM convened at Peterson Space Force Base, Colorado. Sentence entered by military judge on 10 April 2023: Dishonorable discharge, confinement for 22 months, reduction to E-1, forfeiture of all pay and allowances, and a reprimand.

*For Appellant*: Lieutenant Colonel Anthony J. Ghiotto, USAF; Captain Michael J. Bruzik, USAF.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, DOUGLAS, and PERCLE, *Appellate Military Judges*.

Judge DOUGLAS delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge PERCLE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

DOUGLAS, Judge:

A general court-martial comprised of a trial judge convicted Appellant, consistent with his pleas and pursuant to a plea agreement, of three specifications of sexual assault and one specification of abusive sexual contact upon two adult victims, all in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1] The trial judge sentenced Appellant to a dishonorable discharge, 22 months' confinement, reduction to the grade of E-1, forfeiture of all pay and allowances, and a reprimand.[2] The convening authority took no action on the findings or the sentence.

Appellant submitted his case for review by this court on its merits. After conducting our own independent review of this case, we find error that materially prejudiced Appellant's substantial rights. Therefore, we set aside the findings and the sentence and authorize a rehearing.

# I. BACKGROUND

## A. Circumstances of the Offenses[3]

On the evening of 25 September 2021, EB, a female Air Force cadet attending the United States Air Force Academy, met a group of female friends[4] at Appellant's residence in Colorado Springs, Colorado. They socialized, drank alcohol, and played card games. Appellant was not present; however, he arrived home in the early morning of 26 September 2021 and began socializing with the group.

After people started going to bed, EB felt sick. She went to the bathroom to vomit, and Appellant offered her a glass of water. EB started to walk to the living room couch to sleep, but Appellant offered her his bed to sleep on and she accepted. While they were in his bed together, Appellant penetrated EB's vulva with his penis as EB was lying face down. Appellant also penetrated EB's

---

[1] Unless otherwise noted, all references to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The Statement of Trial Results and the entry of judgment describe this part of the sentence as "Forfeitures of Pay and/or Allowances: Total Forfeitures." Appellant claims no prejudice from this irregularity, and we find none.

[3] These facts are taken primarily from the Stipulation of Fact admitted at trial.

[4] One of the friends was Appellant's spouse, who had a separate bedroom in the residence.

vulva with his fingers. EB did not consent to Appellant penetrating her vulva with his penis or with his fingers.

Law enforcement began investigating Appellant for the offenses against EB. This included interviewing JS, an Air Force member, who had been friends with Appellant from training school. JS told investigators about a separate incident in which Appellant penetrated her vulva with his penis and touched her breast while he had been on temporary duty to Vandenberg Space Force Base, California.

**B. Procedural History**

Appellant's court-martial took place at Peterson Space Force Base, Colorado, on 14 February 2023. In accordance with his pleas, he was found guilty[5] and sentenced. On 3 March 2023, the convening authority took no action on the findings or the sentence.[6] On 10 April 2023, the trial judge signed the entry of judgment.

The Government later discovered the record of trial was substantially incomplete. On 14 November 2023, Captain (Capt) CT, who was one of the trial counsel at Appellant's court-martial, signed a Memorandum for Record (MFR) addressed to "all reviewing authorities." The MFR was intended to detail the "actions taken by the Government to [o]btain a [f]inalized and [c]ourt [r]eporter [c]ertified [t]rial [t]ranscript."

This MFR outlined approximately six months of government work which began with an email from the court reporter on 2 June 2023, wherein the court reporter simply stated she was unable "to determine a proper [course of action] to enable a better transcript."

On 8 June 2023, Capt CT sent the transcript to the staff judge advocate (SJA) for further guidance. Capt CT noted "most of the transcript was marked 'inaudible' and miss[ed] portions of the court proceeding, to include multiple sentencing witness testimony, sentencing arguments from both counsel, the announcement of the sentence itself, and much more."

The SJA, the deputy SJA, the other trial counsel on the case, and the case paralegals met to discuss possible courses of action. They consulted their supervisory legal office, Space Operations Command (SpOC/JA), who suggested reaching out to the trial judge to inform him of the transcript issues and

---

[5] On the specification of abusive sexual contact upon JS, Appellant pleaded guilty except to the words "without her consent" and guilty to the substituted words "when he knew she was asleep."

[6] The convening authority did, however, provide the language for the reprimand.

requesting he reconstruct the transcript. Also, between 9 and 10 June 2023, Capt CT informed trial defense counsel of the transcript "issues."

On 27 June 2023, Capt CT requested assistance from the trial judge to "correct the attached incomplete/defective transcript" from the court-martial "due to significant portions of the recorded audio being inaudible and unable to be accurately transcribed." On 14 July 2023, the trial judge acknowledged this request and explained he had made "good progress" in an "attempt to recreate the transcript." In trying to complete the transcript, the trial judge relied on "very detailed notes" for the plea inquiry, but he did not have notes for the remainder of the trial, including sentencing witness testimony and arguments. On 17 July 2023, the trial judge provided an edited transcript.

According to the MFR and email attachment, during the following three months of August, September, and October 2023, the court reporter, the trial counsel and trial defense counsel, the trial judge, and the supervisory legal office, including all those involved with ensuring Appellant's record of trial was assembled properly, continued to work diligently in creating as accurate a record of the court-martial as possible without possessing the actual recordings of the trial proceedings.

Nevertheless, the final version of the trial transcript[7] flagged extended periods of time (identified in brackets) as inaudible. All the testimony of the sentencing witnesses is either paraphrased or indicated as "not accounted for in this transcript." The parties' sentencing arguments are similarly noted as "not accounted for in the transcript." Despite this incomplete record, the court reporter certified the transcript and the record of trial on 2 November 2023.

Appellant's case was docketed with this court for automatic review on 9 January 2024—329 days after Appellant's court-martial concluded. *See* Article 65(b)(1), UCMJ, 10 U.S.C. § 865(b)(1).

On 20 December 2024, Appellant's counsel submitted this case to this court for review on its merits without raising any specific assignments of error. Thereafter, in conducting our review of Appellant's case as required by Article 66(d), UCMJ, 10 U.S.C. § 866(d), we discovered the record of the court-martial included a nonverbatim transcript of substantial portions of the trial proceedings. We also discovered a computer disc of the purported audio recordings of

---

[7] The transcript in Appellant's record of trial consists of 149 pages and includes two separate sessions of Appellant's court-martial. The first session was held on 13 December 2022 and consisted of a motions hearing and arraignment. The second session was held on 14 February 2023, starting at page 92 of the transcript, and included the findings and sentencing.

the trial proceeding that included almost eight hours of a substantially inaudible record.

On 5 February 2025, the court issued an order directing the Government to show good cause why we should not set aside the findings of guilty and sentence and order a rehearing to establish an adequate record for our review. On 26 February 2025, counsel for the Government filed a timely response proposing "the Court should find the lack of a complete record to be waived or harmless beyond a reasonable doubt and decline to return or remand the record." In the alternative, Government counsel argued, "If return or remand is indeed appropriate, this Court should only order a rehearing on the sentence and affirm the findings portion of the trial."

## II. DISCUSSION

### A. Law

In reviewing a court-martial conviction, this court "may act only with respect to the findings and sentence as entered into the record." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1).[8] The court may affirm only such findings of guilty as the court finds correct in law, and the sentence or such part or amount of the sentence, as the court finds correct in law and fact and determines, on the basis of the entire record, should be approved. *See* National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 542(b)(1)(A), 134 Stat. 3388, 3611–12 (2021).

"Each general and special court-martial shall keep a separate record of the proceedings in each case brought before it." Rule for Courts-Martial (R.C.M.) 1112(a). This record must include a "substantially verbatim recording of the . . . proceedings except sessions closed for deliberations and voting." R.C.M. 1112(b)(1). To meet these requirements, "Court-martial proceedings may be recorded by videotape, audiotape, or other technology from which sound images may be reproduced to accurately depict the court-martial." R.C.M. 1112(a). The questions of "[w]hether a record is complete and a transcript is verbatim" are matters of law this court reviews de novo. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014).

If the record of trial is "incomplete or defective, a court reporter or any party may raise the matter to the military judge for appropriate corrective action."

---

[8] The scope, applicability, and meaning of Article 66(d), UCMJ, 10 U.S.C. § 866(d), is a matter of statutory interpretation the United States Court of Appeals for the Armed Forces reviews de novo. *United States v. McAlhaney*, 83 M.J. 164, 166 (C.A.A.F. 2023) (citing *United States v. Gay*, 75 M.J. 264, 267 (C.A.A.F. 2016)).

R.C.M. 1112(d)(2). The military judge has four options: (1) "reconstructing the portion of the record affected;" (2) "dismissing affected specifications;" (3) "reducing the sentence of the accused;" or (4) "if the error was raised by motion or on appeal by the defense, declaring mistrial as to the affected specifications." R.C.M. 1112(d)(3)(A)–(D).

If the attempts to reconstruct the missing portions of the transcript result "in a record that is equivocal such that it leaves uncertainty as to the substance of the lost testimony, it will not suffice." *United States v. Tate*, 82 M.J. 291, 296 (C.A.A.F. 2022) (citing *United States v. Davenport*, 73 M.J. 373, 378 (C.A.A.F. 2014) (holding reconstruction will not cure a defective or incomplete record where there is uncertainty about the substance of missing witness testimony)).

If a Court of Criminal Appeals sets aside the findings or sentence, the court may order a rehearing. Article 66(f)(1)(A)(ii) and Article 66(f)(2)(B), UCMJ, 10 U.S.C. §§ 866(f)(1)(A)(ii), 866(f)(2)(B).

## B. Analysis

As explained above, Appellant submitted a brief to this court in which he did not allege any specific assignments of error, but also did not concede the findings and sentence are correct in law and fact. The Government—in response to an order to show cause from this court—filed a response brief in which it argues this court should not set aside the findings and sentence, remand the case to the trial judiciary, or order a rehearing. Specifically, the Government offers Appellant has waived this issue on appeal because "Appellant did not object to the reconstructed record." In the alternative, the Government argues we should only remand the case for resentencing. According to the Government, despite the inaudible portions of the recording of the findings, we nevertheless have a sufficient record to conduct our statutorily mandated review based on the military judge's reconstructed transcript and Appellant's stipulation of fact.

We disagree. In Appellant's case, although the trial judge tried to reconstruct the affected portions of the transcript, his attempt was unsuccessful to meet the standard set by *Davenport* and *Tate*. Even after this attempted reconstruction, we are still uncertain about the substance of significant portions of the court-martial proceedings, for both phases of trial, findings and sentencing. Therefore, we cannot fully exercise our responsibilities under Article 66(d), UCMJ.

We have specifically considered whether we may fulfill our duties based on a review of the audible portions of Appellant's plea inquiry, the available transcript, and the admitted stipulation of fact. We have determined that we cannot. As noted above, the transcript references several areas flagged as

inaudible. Of particular concern, on page 126 of the transcript, during the military judge's inquiry into the plea agreement and stipulation of fact, the following exchange is reflected:

> [Military Judge (MJ)]: [inaudible] committed a sexual act upon [JS].
>
> [Appellant]: Yes, Your Honor.
>
> MJ: [inaudible]
>
> [Appellant]: No, Your Honor.
>
> MJ: [inaudible]
>
> [Appellant]: Yes, Your Honor.
>
> MJ: [inaudible]
>
> [Appellant]: No, Your Honor.
>
> MJ: [inaudible] specification [inaudible]. Tell me what happened.
>
> [Appellant]: [inaudible]
>
> MJ: [inaudible]
>
> MJ: [inaudible] your penis penetrating her vulva?
>
> [Appellant]: Yes, Your Honor.

Reading the stipulation of fact is not sufficient for our review when we are unable to understand the context of Appellant's answers to the questions from the trial judge. We are unable to determine how Appellant described his misconduct in his own words. Whether a contradiction exists between the stipulation of fact and Appellant's own words is unknown. There is substantial uncertainty as to the substance of the lost guilty plea inquiry, witness testimony in sentencing, as well as the arguments of the parties in sentencing. *See Tate*, 82 M.J. at 296.

We have also carefully reviewed the MFR and email attachment and find returning the record for further attempts at correction or reconstruction, pursuant to R.C.M. 1112(d)(2), would be futile.

Finally, we have considered the Government's argument that Appellant did not object to his record of trial, including the nonverbatim transcript, either upon receipt or now on appeal. Nonetheless, we cannot simply affirm the findings and sentence in this case and resolve the issues surrounding the incomplete record of trial merely because of Appellant's failure to object when we are independently required to review the record de novo in order to satisfy

Appellant's right to automatic review of his case. *See* Article 66(b)(3), UCMJ, 10 U.S.C. § 866(b)(3).

Consequently, we are unable to affirm the guilty findings and the sentence of Appellant's court-martial as correct in law and fact based on a proper review of the entire record. *McAlhaney*, 83 M.J. at 166.

### III. CONCLUSION

The findings of guilty and the sentence are **SET ASIDE**. A rehearing is authorized. The record of trial is returned to The Judge Advocate General for further proceedings consistent with this opinion. *See* Article 66(f), UCMJ, 10 U.S.C. § 866(f).

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court